# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    **v.**                                            **Case No. 09-CR-54**

**JAMES WARE**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant James Ware pleaded guilty to attempted obstruction of commerce by robbery, contrary to 18 U.S.C. § 1951, arising out of his participation in a scheme to rob a drug dealer. In sentencing defendant, I first calculated the advisory guideline range, then determined the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a).

## I. GUIDELINES

Defendant's crime carried a base offense level of 20, U.S.S.G. § 2B3.1(a), with enhancements of 5 levels because he possessed a firearm, § 2B3.1(b)(2)(C), and 1 level because the taking of a controlled substance was an object of the offense, § 2B3.1(b)(6), for an adjusted level of 26. I then deducted 3 levels under the attempt guideline, § 2X1.1(b)(1), and 3 levels for acceptance of responsibility, § 3E1.1, for a final level of 20. Coupled with defendant's criminal history category of I, level 20 produced a guideline range of 33 to 41 months' imprisonment.

## II. SECTION 3553(a)

**A.**    **Sentencing Factors**

Section 3553(a) requires a sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in sub-section (a)(2): just punishment, deterrence, protection of the public, and rehabilitation of the defendant. While the guidelines will generally be the starting point in making this determination, the court may not presume that the guideline sentence is the correct one. Rather, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the court must consider all of the § 3553(a) factors and make an individualized assessment as to the appropriate sentence. See Gall v. United States, 552 U.S. 38, 49-50 (2007).

## B. Analysis

### 1. The Offense

The ATF obtained information that a man named Eureka Hopson was in the business of robbing drug dealers. An undercover agent, posing as a cocaine trafficker from Rochester, New York, made contact with Hopson, and they agreed to rob the agent's supplier of fourteen kilograms of cocaine, which they would split.

On January 28, 2009, the scheduled date of robbery, the agent and Hopson spoke, and Hopson indicated that instead of his usual partner he was bringing another partner who had several young males with him who liked to shoot. That afternoon, the robbery participants, including this defendant, gathered at the residence of Deshaun Baldwin and his girlfriend. Some time later, Hopson called Xavier Turner, the apparent head of this assembled group, and discussed the robbery. Turner confirmed that the men were ready, and they left to meet Hopson, with defendant in possession of a handgun. They met Hopson, then drove to the Mitchell Domes, where they met the agent. The agent then led the men to another location, where all eight were arrested. Agents seized a total of three guns.

Defendant later made a jailhouse confession, in which he described the intended robbery. He said that the group had a total of three guns and intended to do a "lick." In his version of the offense to the pre-sentence report ("PSR") writer, defendant stated that Baldwin approached him on the day of the robbery and asked if he wanted to participate; he believed he was asked because Baldwin knew he had a gun. He stated that he was unaware of the particulars but agreed to participate anyway.

3

### 2. The Defendant

Defendant was just twenty years old, with a prior record consisting of two ordinance violations for loitering – illegal drug activity. He also had a pending obstructing case arising out of the events underlying the second loitering ticket, in which he allegedly swallowed an object officers believed related to drug trafficking and refused commands to spit it out. According to the Milwaukee Police Department, he was a member of the "Murda Mobb" street gang, but he denied that. He did admit daily use of marijuana until recently.

The record contained some positives. Defendant was in a relationship, and his girlfriend recently gave birth to their child. She remained supportive. His mother also remained supportive and made a positive statement, which was set forth in ¶ 58 of the PSR. After some early problems on pre-trial release in this case – missing a few UAs and testing positive for marijuana once – he largely complied. He completed in-patient treatment at Genesis in November 2009 and seemed to have gained some insight into the problems drugs caused. He also enrolled in GED classes and worked through a temporary agency in the year prior to sentencing.

### 3. The Sentence

The guidelines recommended 33-41 months' imprisonment, and I agreed that a prison sentence was needed to satisfy the purposes of sentencing. Although this was a sting operation, it was nevertheless a very serious crime. Armed with a handgun, defendant agreed to engage in the robbery of a drug dealer, who was also likely to be armed. This was simply a recipe for disaster. Prison was needed to provide just punishment.

I also found prison necessary to protect the public and deter. Although defendant had

4

no prior criminal convictions, this was not his first violation of the law, and the circumstances of this case suggested a need for community protection from violence. Prison was also needed to impress upon defendant that he cannot engage in this conduct or these associations in the future.

The government recommended a sentence at the low end of the range, but for several reasons I found a term somewhat below the guidelines' recommendation sufficient. First, I concluded that defendant's role in the offense was somewhat limited. He did not plan the robbery and was brought in late in the process. Second, defendant had during the pendency of this case demonstrated some positive progress – enrolling in GED classes, completing drug treatment and working. He had people in the community who cared about him. He also debriefed with the government regarding his involvement in this case. Finally, defendant had never been to prison before. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005).

Defendant recommended a sentence of 18 months, but I found that insufficient given the seriousness of the offense. Under all of the circumstances, I found a sentence of 21 months sufficient but not greater than necessary. This sentence provided sufficient punishment, deterrence and protection of the public, given the serious nature of the crime and the danger it presented, while acknowledging defendant's limited role and the positives in his character discussed above. This sentence varied modestly from the guideline range, about 3 levels, and because it was based on the particular facts of the case it created no unwarranted disparity. I found it appropriate to impose a slightly lower sentence here than I did on co-

5

defendant Travis Raddle, who had more significant prior contacts, including a prior stint on probation and a revocation. See United States v. Raddle, No. 09-CR-54, 2010 WL 342590 (E.D. Wis. Jan. 23, 2010). A sentence significantly below Raddle's was not warranted, as the nature of their participation in the offense was quite similar, and this defendant provided a gun.

### III. CONCLUSION

I therefore committed defendant to the custody of the Bureau of Prisons for 21 months, followed by three years of supervised release. As conditions of supervision, I ordered him to participate in a program of drug testing and treatment, obtain his GED or HSED, participate in the cognitive intervention program, and avoid all association or communication with the Murda Mobb gang or any other gang.

Dated at Milwaukee, Wisconsin, this ____ day of February, 2010.

                                                                                 _____
                                                                                 LYNN ADELMAN
                                                                                 District Judge